UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE LEROY JAMISON,

    Petitioner,                                          Civil No. 2:22-CV-10282
                                                               HONORABLE SEAN F. COX
v.                                                            CHIEF UNITED STATES DISTRICT JUDGE

SHERMAN CAMPBELL,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Andre Leroy Jamison, ("petitioner"), confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 through counsel, Craig A. Daly, in which he challenges his conviction for possession with intent to deliver 50 or more but less than 450 grams of heroin, Mich. Comp. Laws § 333.7401(2)(a)(iii); possession with intent to deliver 450 or more but less than 1000 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(ii); possession with intent to deliver marijuana, Mich. Comp. Laws § 333.7401(2)(d)(iii); felon in possession of a firearm, Mich. Comp. Laws § 750.224f; felon in possession of ammunition, Mich. Comp. Laws § 750.224f(6); five counts of possession of a firearm in the commission of a felony, second offense, Mich. Comp. Laws § 750.227b, and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted following a jury trial in the Oakland County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan

1

Court of Appeals's opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the discovery of drugs, firearms, and ammunition during the execution of a search warrant at a Pontiac residence on June 6, 2017. The prosecution presented evidence that, after conducting surveillance, members of the Oakland County Narcotics Enforcement Team ("NET") obtained a search warrant for 105 Pinegrove. On the day of the raid, defendant was seen leaving the residence in a Ford Taurus. The police coordinated a traffic stop, took defendant into custody, and, during a search, recovered some keys. The officers then executed the search warrant for the house. The keys that were recovered from defendant provided access to both the side door of the house and to a car with no tires inside the garage. Inside the car, detectives found heroin, cocaine, drug-packaging materials, and items bearing defendant's name. In other areas of the garage, the officers found additional items used to package drugs, heroin, marijuana, two firearms, and ammunition. Inside the house, the detectives found photographs of defendant, several items bearing defendant's name with the Pinegrove address, additional firearms, and more ammunition. The detectives also seized several cell phones. While in jail, defendant made phone calls that included references to the search of the premises. At trial, the defense disputed that defendant possessed the contraband found at 105 Pinegrove or had knowledge that drugs were stored there. The defense argued that the NET detectives "set [defendant] up" and planted the contraband at the residence.

*People v. Jamison*, No. 345262, 2020 WL 1968323, at * 1 (Mich. Ct. App. Apr. 23, 2020); lv. den. 507 Mich. 881, 954 N.W.2d 799 (2021).

> Petitioner seeks a writ of habeas corpus on the following grounds:
>
> I. While the Michigan Court of Appeals' decision, that the trial court's exclusion of evidence of a civil lawsuit against the lead detectives violated Jamison's right to present a defense and right of confrontation, was correct, the appellate court's denial of relief was contrary to the application of the harmless error test set forth by the United States Supreme Court.
>
> II. Jamison was denied his due process right to fundamental fairness when the trial court allowed evidence of a prior drug incident through a jail call that Jamison was caught with 70 grams of drugs on his bike.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with

3

the holding in a prior decision" of the Supreme Court. *Id.* at 102. In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

### III. Discussion

**A. Claim # 1. The exclusion of evidence of petitioner's prior lawsuit against two of the investigating detectives.**

Petitioner first claims that his right to present a defense and his right to confront the witnesses was violated when the trial court refused to allow petitioner to present evidence or cross-examine the two investigating detectives, Jason Teelander and Daniel Main, about a prior federal civil rights lawsuit that petitioner brought against these two men several years earlier. Petitioner argues that this evidence was relevant to support his defense that the detectives planted the narcotics in this case. He further argues that the Michigan Court of Appeals erred in concluding that the judge's decision was harmless error.

The Michigan Court of Appeals rejected petitioner's claim:

> Defendant argues that the trial court's refusal to allow him to introduce evidence that he had previously filed a civil lawsuit against two of the investigating detectives denied him his right to present a defense and to cross-examine witnesses. While we agree that defendant should have been allowed to introduce evidence of the civil lawsuit while (sic), we find that the trial court's abuse of its discretion in precluding this evidence was not outcome determinative.
> . . . .
>
> Defendant's claims related to this issue involve a civil lawsuit that defendant previously brought against the two primary detectives in this matter. In that lawsuit, defendant alleged that during an unrelated traffic stop in 2011, the detectives assaulted him, he later sued them, and the case was dismissed by settlement. Defendant argues that this evidence was relevant to show that the detectives were motivated to investigate him and plant the contraband at the residence.

4

> . . . .
>
> The fact that the detectives assaulted defendant some years previously, in an unrelated incident, and that defendant brought a civil lawsuit against them, could make it more probable than not that the detectives could be biased against defendant, at the very least to the extent that they were motivated to more closely observe defendant thereafter and watch for potential drug-trafficking activities. Where the detectives had been named in an assault lawsuit concerning defendant and settled the matter with him could lead to their predisposition against defendant and make him the target of investigation and surveillance to which he might not otherwise have been subjected. Allowing the defense to elicit testimony and otherwise introduce evidence concerning the civil lawsuit would not, as the trial court stated, lead to a "trial within a trial." Rather, the defense would simply be able to question the detectives concerning any bias they may have had against defendant.
>
> However, while the trial court abused its discretion by excluding any reference to or examination concerning this prior civil lawsuit, we do not find that this error was outcome determinative. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative."
>
> At trial in this matter, when the police took defendant into custody, he had keys on his person that provided access to both the house and to an inoperable car in the garage. Inside the car, and on the premises, officers found more than 900 grams of cocaine, more than 100 grams of heroin, nearly 400 grams of marijuana, drug-packaging materials, firearms, ammunition, and numerous items bearing defendant's name and connecting him to the premises. Given the quantity of narcotics and the packaging materials found, there was significant evidence indicating defendant's guilt of the charged crimes. Had evidence concerning the prior lawsuit been allowed, that evidence did not negate the fact that defendant was found with keys to the car and home in which a significant quantity of drugs and drug-trafficking materials were found. Consequently, defendant is not entitled to appellate relief with respect to this issue.

*People v. Jamison*, 2020 WL 1968323, at * 1–3 (internal citation omitted).

A federal district court on habeas review of a state court conviction can proceed directly to a harmless error analysis of a habeas petitioner's claims without first reviewing the merits of the claim or claims, "when it is in the interest of judicial economy and brevity to do so." *Dittrich*

5

*v. Woods*, 602 F. Supp. 2d 802, 809 (E.D. Mich. 2009); *aff'd in part and rev'd in part on other grds,* 419 F. App'x. 573 (6th Cir. 2011). This Court will move directly to the issue of harmlessness as to any potential error and will not revisit the issue of whether the trial judge's decision was erroneous or not, particularly since the Michigan Court of Appeals agreed that the trial judge erred in excluding evidence of the prior lawsuit.

On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court finds it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). In *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003)(per curiam), the Supreme Court held that habeas relief would be appropriate only if a habeas petitioner could show that a state court applied harmless error review in an "'objectively unreasonable' manner."

However, in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief should be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. "Citing concerns about finality, comity, and federalism," the Supreme Court in *Brecht* "rejected the *Chapman* standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions." *Fry v. Pliler*, 551 U.S. 112, 116 (2007)(citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).

Most recently, the U.S. Supreme Court held that in order for a habeas petitioner to obtain relief on an error that a state appellate court has determined to be harmless, the petitioner must not only satisfy the *Brecht* standard and show that the error had a substantial and injurious effect or influence on the verdict, the petitioner is also required to show that the state court's determination that the error was harmless beyond a reasonable doubt was an unreasonable

6

application of *Chapman. Brown v. Davenport,* 142 S. Ct. 1510, 1517, 1520, 1524 (2022). "When a state court has applied *Chapman*, § 2254(d)(1) requires a habeas petitioner to prove that the state court's decision was unreasonable." *Id.* at 1525.

In the present case, the Michigan Court of Appeals reasonably concluded that the exclusion of petitioner's prior lawsuit against the two leading detectives was harmless for several reasons.

First, the two leading detectives who had previously been sued by petitioner were not the only police officers involved in the arrest of petitioner and the search and seizure of the drugs. When the evidence was found, there were several other officers present also. (ECF No. 6-13, PageID. 751). Significantly, two other police officers, Deputies Brandon Scruggs and Ruben Garcia, arrested petitioner and recovered the keys to the house as well as the keys to the car inside of the house's garage where the narcotics were recovered. (ECF No. 6-14, PageID. 1028-33, 1037, 1042, 1098, ECF No. 6-15, PageID. 1283, 1307, 1361, 1394-1401). Thus, although the prior civil lawsuit might have provided some evidence to support petitioner's bias claim as to Detectives Main and Teelander, it did nothing to demonstrate bias as to the other officers involved or undermine their testimony. Thus, the exclusion of the evidence of the prior lawsuit against Main and Teelander was harmless. *See People v. Smith*, 171 A.D.3d 523, 524, 98 N.Y.S.3d 154, 155 (2019)(trial court's error in precluding defendant from impeaching detective, on cross-examination, with evidence that detective had been involved in lawsuit in which it was alleged that the detective had fabricated evidence was harmless, in drug prosecution; evidence of defendant's guilt was generally overwhelming and testimony of officer involved in lawsuit was significantly corroborated by testimony of another officer).

Secondly, at trial the prosecution introduced recordings of calls that petitioner made while in the Oakland County Jail and prior to his arraignment. (ECF No. 6-15, PageID. 1299-1301). In one phone call that petitioner made to a male friend or family member on June 8, 2017, petitioner acknowledged that it would be hard for him to win this case, "[Be]cause you know I had a lot of shit." Recording ID No. 75871926_0139358_06-08-2017_130008_1- 248-636-5585_2113, at ~524–534 seconds.  And, in another call to his sister made on June 7, 2017, petitioner's sister noted that the police "got guns out the garage [sic]," and petitioner responded, "I know."  His sister then said, "They found a lotta guns," and Petitioner responded, "Oh yeah." Recording ID No. 75862472_0139358_06-07-2017_164952_1- 248-929-4061_2113, at ~195–210 seconds.  Petitioner's admission in the telephone call that the prosecution had a strong case against him made the exclusion of the prior lawsuit against the detectives harmless. *See e.g. United States v. Dowdell*, 737 F. App'x 577, 583 (2d Cir. 2018).

Significantly, petitioner never alleged during these two phone calls which were admitted into evidence (as well as several other recorded telephone conversations from the jail which were not admitted into evidence but included in the Rule 5 materials and which were reviewed by this Court) that the police had planted the evidence or that he was unaware of the presence of the drugs or guns in the house or in the car inside the garage.  Instead, petitioner appeared to be confused about how the police had tied him to the house at 105 Pinegrove, as he seemed to believe that the search of the property was somehow based on the traffic stop. During the June 7 call, petitioner informed his sister that on the day the warrant had been executed he had been "chilling" at the house, how he had not seen anyone, and how "I ain't did no dealing with nobody" that day. (Call # 75862472, at ~474–480 seconds). Likewise, during the June 8, 2017 call, petitioner told his male friend that "I don't deal too much hands to hands [sic]" while

8

discussing his confusion about how the police had linked him to the house. (Call # 75871926, at ~585–613 seconds). The fact that petitioner did not accuse the detectives of planting the drugs on him in these telephone calls to his sister and to a friend calls into question the credibility of his defense.

Finally, in these two calls, petitioner compared his current situation with the time that the police seized 70 grams of a controlled substance (cocaine) off him. Petitioner admitted to being guilty of possessing the drugs on that occasion but noted that the case was thrown out for being the fruit of an illegal search. Petitioner's prior arrest for possessing a fairly large quantity of cocaine, which he admitted to being guilty of, makes it more likely that petitioner was in possession of the drugs recovered from the car inside of the garage of the house where petitioner was living and less likely that these drugs were planted by the detectives.

In light of the foregoing, the Michigan Court of Appeals reasonably concluded that the exclusion of the prior lawsuit against the detectives was harmless. "Even if *some* fairminded jurist applying *Chapman* could reach a different conclusion, [this Court] cannot say that *every* fairminded jurist must. *Brown v. Davenport*, 142 S. Ct. at 1530 (emphasis original).

**B. Claim # 2. The prior bad acts claim**.

Petitioner next claims that his right to a fair trial was violated by the admission of evidence that he previously possessed 70 grams of a controlled substance.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially

9

rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting improper character evidence or evidence of prior bad acts is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F. 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003).

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

## V. ORDER

Based upon the foregoing, **IT IS ORDERED** that:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: May 10, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 10, 2023, by electronic and/or ordinary mail.

s/J. McCoy
Case Manager